UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-20621-BLOOM/Louis

GRACIE LEE PRICE,

     Plaintiff,

v.

CARNIVAL CRUISE LINES,

     Defendant.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT AND
## RENEWED MOTION TO EXCLUDE THE TESTIMONY OF LIABILITY EXPERT

**THIS CAUSE** is before the Court upon Defendant Carnival Cruise Lines' ("Defendant")
Motion for Summary Judgment, ECF No. [74] ("Motion for Summary Judgment"), along with its
corresponding Statement of Material Facts, ECF No. [75] ("SMF"). Plaintiff Gracie Lee Price
("Plaintiff") filed a Response in Opposition to the Motion for Summary Judgment, ECF No. [90]
("Response"), and her Statement of Facts in Opposition to Defendant's Motion for Summary
Judgment, ECF No. [91] ("Response to SMF"). Defendant filed a Reply to Plaintiff's Response,
ECF No. [95] ("Reply"), and its Reply Statement of Material Facts, ECF No. [96] ("Reply to
SMF"). Upon review of the briefings, the Court directed the parties to file supplemental briefings
in light of the impending depositions of Rohit Nautiyal ("Mr. Nautiyal") and Wendy Giadans
("Ms. Giadans"). *See* ECF No. [112]. Plaintiff thereafter filed her Supplemental Briefing, ECF No.
[113] ("Plaintiff's Supplement"), to which Defendant filed its Responsive Supplemental Briefing,
ECF No. [119] ("Defendant's Supplement"). Also before the Court is Defendant's Motion to
Exclude the Testimony of Plaintiff's Liability Expert, Jay Daily, ECF No. [128] ("Second *Daubert*
Motion"). Plaintiff filed a Response in Opposition to the Second *Daubert* Motion, ECF No. [129],

to which Defendant filed a Reply, ECF No. [133]. The Court has carefully considered the Motions, all opposing and supporting submissions, the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Second *Daubert* Motion is granted, and the Motion for Summary Judgment is granted.

## I.   BACKGROUND

Plaintiff initiated this maritime personal injury action against Defendant on January 7, 2020, ECF No. [1], and thereafter filed her Amended Complaint, ECF No. [36] ("Amended Complaint"). The Amended Complaint asserts the following three counts against Defendant: Count I – Negligence; Count II – Negligent Failure to Maintain; and Count III – Negligent Failure to Warn. *See id.* Count I alleges that Defendant was negligent in "failing to provide a reasonably safe means of walking in public areas," "allowing a dangerous condition(s) to exist upon its vessel," "failing to warn passengers," "failing to avoid, eliminate and correct the dangerous condition(s)," "failing to provide adequate crew to maintain the flooring," and "providing negligent emergency assistance." *Id.* ¶ 15.[1]

## II.  MATERIAL FACTS

Based on the parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

Plaintiff was a passenger aboard Defendant's vessel *M/S Carnival Valor* ("*Valor*") on February 28, 2019. *See* ECF Nos. [75] ¶ 1; [91] ¶ 1.[2] Plaintiff tripped and fell while walking through the Photo Gallery on the starboard side of Deck 4 of the *Valor*. *See* ECF Nos. [75] ¶ 4;

---

[1] The Court notes that Plaintiff's claims can be grouped into four categories of negligence claims: failure to warn, failure to maintain, failure to provide adequate crew, and failure to provide emergency assistance.

[2] Plaintiff's Response to SMF, ECF No. [91], includes additional facts. Plaintiff restarts the paragraph numbers for her additional facts, rather than continuing the paragraph numbers. Citations to Plaintiff's Response to SMF in this Order are references to the first set of paragraph numbers.

[91] ¶ 4. Plaintiff testified that a round metal clamp in the walkway of Deck 4 of the *Valor* caused her fall. *See* ECF Nos. [75] ¶ 15; [75-1] at 28 ("I saw the protruding metal thing. That's the only thing that would have tripped me that was raised up.").[3] The round metal clamps in the walkway of the Photo Gallery on the starboard side of Deck 4 of the *Valor* measure approximately forty (40) millimeters in diameter and protrude approximately three (3) millimeters from the tile floor. *See* ECF Nos. [75] ¶ 7; [91] ¶ 7. Plaintiff testified that she "could have" and "should have" seen the clamp in the walkway. *See* ECF Nos. [75] ¶ 6; [75-1] at 25-26.[4] Plaintiff also testified that the clamp was "shiny." ECF No. [75-1] at 16, 21, 25. According to Plaintiff's testimony, the rest of her travel companions saw the clamp. *See id.* at 26. Defendant submits that the record is devoid of any evidence that the round metal clamp did not meet industry standards. *See* ECF No. [75] ¶ 12. Plaintiff does not dispute that the record is devoid of any evidence that the clamp did not meet industry standards, but Plaintiff points out that she has not yet inspected the vessel to ascertain whether the clamp conforms with industry standards. *See* ECF No. [91] ¶ 12.

After the parties filed their briefings as to the Motion for Summary Judgment, the Court directed the parties to file supplemental briefings based upon the impending depositions of Mr. Nautiyal, an assistant photo manager, and Ms. Giadans, a former photographer, since the depositions may reveal evidence relevant to the Motion for Summary Judgment. *See* ECF No. [112]. Plaintiff thereafter filed Plaintiff's Supplement, stating that the depositions of Mr. Nautiyal

---

[3] Plaintiff disputes that Plaintiff testified that only the clamp caused her fall. *See* ECF No. [91] ¶ 15. Plaintiff states that Defendant's employees' actions and the placement, design, and maintenance of the clamp are also implicated in her fall. *See id.* While such factors may be implicated in causing her fall, it is undisputed that the clamp was the immediate physical cause of her fall. It is undisputed that there was no other tripping hazard that could have caused Plaintiff's fall. *See* ECF No. [75-1] at 28.

[4] Plaintiff disputes that Plaintiff testified that she could have and should have seen the clamp. *See* ECF No. [91] ¶ 6. Plaintiff states that she noticed the clamp after her fall. *See id.* However, a review of the deposition testimony establishes that Plaintiff testified that she "could have" and "should have" seen the clamp. *See* ECF No. [75-1] at 25-26.

and Ms. Giadans did not yield any evidence of a dangerous condition or Defendant's notice of a dangerous condition. *See* ECF No. [113]. However, Plaintiff also advised that Plaintiff's expert, Jay Daily ("Mr. Daily"), completed an inspection of the vessel, and his expert report provided support that Defendant had constructive knowledge of the dangerous condition. *See id.* Defendant filed its Supplement responding that the Court should not consider Mr. Daily's expert report. *See* ECF No. [119].

Defendant also filed a Second *Daubert* Motion after the Court granted Defendant leave to do so. *See* ECF No. [127]. Defendant contends that Mr. Daily is not qualified as an expert, his methodology is unreliable, and his opinions will not be helpful to the jury. *See* ECF No. [128]. Plaintiff responds that Mr. Daily is qualified, his methodology is reliable, and his testimony will be helpful. *See* ECF No. [129].

## III.  LEGAL STANDARD

### a.  Motion for Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility

determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*,

549 F.3d at 1343. Yet, even where a non-moving party neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

### b. *Daubert* Motion

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the court must engage in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d

1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

As for the qualification prong, an expert may be qualified in the Eleventh Circuit "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *See id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. Jun. 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[5]

Next, when determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation omitted) (quotation marks omitted). To make this determination, the district court typically examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *See id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). The Eleventh Circuit has emphasized that the four factors above are not exhaustive, and a court may need to conduct an alternative analysis to evaluate the reliability of an expert opinion. *See id.* at 1262 ("These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion."). Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *See d.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *See id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *See id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court

to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *See Rink*, 400 F.3d at 1293 n.7.

On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

## IV.  DISCUSSION

### a.  Second *Daubert* Motion

To properly address the Motion for Summary Judgment, the Court must consider the supplemental briefings, which in turn implicate the expert opinion of Mr. Daily. As such, the Court begins by addressing the Second *Daubert* Motion. As noted above, Defendant argues that Mr. Daily is not qualified as an expert, his methodology is unreliable, and his opinions will not be helpful to the jury. *See* ECF No. [128]. Plaintiff responds that Mr. Daily is qualified, his methodology is reliable, and his testimony will be helpful. *See* ECF No. [129].

The parties' arguments regarding the reliability of Mr. Daily's methodology is dispositive on the admissibility of Mr. Daily's expert opinion. As such, the Court's analysis begins and ends with that prong of the *Daubert* analysis. Defendant argues that Mr. Daily does not identify a reliable methodology in his expert report. *See* ECF No. [128] at 11-17. Mr. Daily appears to have merely looked at the metal clamps in question before concluding that they constituted an unreasonably dangerous condition because they violated industry standards. *See id*. at 12. Moreover, Defendant claims that Mr. Daily failed to identify any industry standards that he purportedly used to support his opinion that the clamps posed a dangerous condition. *See id.* at 14-17.

Plaintiff responds that Mr. Daily's methodology is reliable because Mr. Daily explained that the presence of elevated clamps did not create the dangerous condition but that the edge profile of the clamps – or the "rise to run ratio" – created the dangerous condition. *See* ECF No. [129] at 6-8. Plaintiff also notes that Mr. Daily's references to industry standards were references to 49 C.F.R. § 39 and "ASTM," which have been served to Defendant as supplemental materials. *See id.* at 8. Plaintiff also points out that Mr. Daily referred to the hierarchy of safety controls that is used to assess safety hazards in product design. *See id.* at 9-10.

In its Reply, Defendant submits that Plaintiff did not serve Defendant supplemental materials regarding 49 C.F.R. § 39 and "ASTM." *See* ECF No. [133] at 3. As a result, Defendant is still unclear what applicable standard was set forth in "ASTM," and Plaintiff's citation to 49 C.F.R. § 39 is similarly unavailing because it contains numerous subparts that are clearly irrelevant. *See id.* at 4, n.3. Further, even if Plaintiff provided supplemental materials, properly explained what ASTM stands for, and identified which subparts of 49 C.F.R. § 39 are applicable, Plaintiff's argument is unavailing because Mr. Daily failed to identify the industry standards in his

expert report. *See id.* at 4. With respect to Plaintiff's argument regarding the edge profile, or the "rise to run ratio," Defendant maintains that Mr. Daily failed to explain how he arrived at his conclusions that the edge profile violates any applicable standard. *See id.* at 5. Without any clearly identified industry standard, Mr. Daily's estimation of the "rise to run ratio" does not establish that the edge profile posed a dangerous condition. *See id.*

Upon review of Mr. Daily's expert report, the Court agrees with Defendant in that Mr. Daily failed to explain how the edge profile violated any applicable industry standard and thereby posed an unreasonable danger. *See* ECF No. [128-3]. Mr. Daily concedes that appliable industry standards, including the "Americans with Disabilities (ADA-1990)," allow a change in elevation of up to a quarter of an inch, similar to the metal clamp in question in this case. *Id.* at 4. Faced with the lack of any applicable standard indicating that the clamp – or more precisely, the edge profile of the clamp – posed a dangerous condition, Mr. Daily argues that "regulations, as written, are not very detailed or specific about this matter so some intuition and practical sensibilities need to be employed." *Id.* In effect, Mr. Daily invites the Court to rely on his intuition and practical sensibilities. The Court declines to do so. The Court considers Mr. Daily's opinion that Defendant created a dangerous condition by violating admittedly nonexistent industry standards to be impermissible *ipse dixit*. *See Umana-Fowler v. NCL (Bah.), Ltd*., 49 F. Supp. 3d 1120, 1123 (S.D. Fla. 2014) (excluding an expert because the expert provided *ipse dixit* statements without explaining how he arrived at his opinions).

To the extent that Plaintiff argues that Plaintiff provided supplemental materials identifying the industry standards that Mr. Daily purportedly relied upon, the fact remains that Mr. Daily failed to identify the industry standards in his expert report. *See* Fed. R. Civ. P. 26(a)(2)(B) (requiring expert witnesses to provide "a complete statement of all opinions the witness will express and the

basis and reasons for them"). Plaintiff's representation that Mr. Daily relied on 49 C.F.R. § 39 and "ASTM" also contradicts Mr. Daily's expert report that there are no industry standards with respect to the edge profile of metal clamps, as discussed above. *See* ECF No. [128-3] at 4. Lastly, to the extent that Plaintiff emphasizes Mr. Daily's discussion regarding the hierarchy of safety controls, the Court notes that the hierarchy is a general design principle. *See id.* at 19. The Court is unaware, and Plaintiff does not provide, any legal authority that general design principles are industry standards that impose an obligation on the Defendant. The reference to general design principles does not establish that Defendant violated an industry standard.[6] In sum, Mr. Daily's methodology is unreliable, and the Court need not address other arguments with regard to Mr. Daily.[7]

Defendant's request to exclude Mr. Daily's expert opinion is granted.

### b. Motion for Summary Judgment

The Court now addresses the Motion for Summary Judgment. As a preliminary matter, the Court notes that discovery was ongoing when the parties filed their briefings, but the discovery deadline has since passed. *See* ECF No. [83]. The Eleventh Circuit has stated that "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988). In fairness to the non-movant, "summary judgment may only be decided upon an adequate record." *WSB-TV v. Lee*, 842 F.2d 1266, 1269 (11th Cir. 1988). "If the documents or other discovery sought would be relevant to the issues presented by the motion for summary

---

[6] To hold otherwise would allow experts to cite to the hierarchy of safety controls, claim that defendants violated one aspect of the hierarchy, and opine on the supposed negligence generally without identifying any specific industry standard that the defendant violated.

[7] Plaintiff relies on *Goins v. Royal Caribbean Cruise, Ltd.*, No. 16-21368-CIV, 2017 WL 5891469 (S.D. Fla. May 31, 2017), in arguing for the reliability of Mr. Daily's methodology. *See* ECF No. [129] at 10-11. However, Plaintiff's pincite and block quotation concern the helpfulness of an expert, not the reliability of the expert. As such, *Goins* does not meaningfully advance Plaintiff's argument regarding reliability.

judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials." *Snook*, 859 F.2d at 870. As such, and in fairness to Plaintiff, the Court permitted supplemental briefing on the Motion for Summary Judgment after discovery was completed. *See* ECF No. [112]. To the extent that Plaintiff contends that she was not permitted to pursue adequate discovery is rendered moot in light of the parties' supplemental briefings.

Turning to the merits of the Motion for Summary Judgment, Defendant argues that summary judgment is warranted for four reasons: (1) Defendant did not breach its duty to warn as the clamp was not hazardous and was open and obvious; (2) Defendant did not have actual or constructive notice of the allegedly dangerous condition; (3) there is no evidence of negligent maintenance or inadequate crew; and (4) there is no evidence to support any of Plaintiff's other negligence claims. *See* ECF No. [74]. Plaintiff takes the contrary position and contends that there are genuine issues of material fact that preclude summary judgment. *See* ECF No. [90]. Specifically, Plaintiff responds that (1) the dangerous condition was not open and obvious; (2) Plaintiff is not required to show Defendant's notice of the dangerous condition for vicarious liability; and (3) there are genuine issues of material fact as to Defendant's notice of the dangerous condition for direct negligence. *See id.* The Court considers each of Defendant's arguments in turn.

### i.    Not Dangerous and Not Open and Obvious

Defendant first argues that there is no evidence indicating that the clamp was dangerous or hazardous. *See* ECF No. [74] at 11-12. According to Defendant, the clamp posed no danger to passengers and did not violate any industry standards. *See id.* at 11. Defendant proffers evidence from its expert witness. Bryan Emond ("Emond") that a protrusion of three-sixteenth (3/16) of an inch, or three (3) millimeters, with rounded and beveled edges, is acceptable under industry standards for walkway surfaces. *See id.* (citing ECF No. [75-2] at 29). Defendant further argues

that Plaintiff's allegation that she tripped on the clamp does not, in and of itself, establish a dangerous condition as to defeat a motion for summary judgment. *See* ECF No. [95] at 2. In the alternative, Defendant submits that even if the clamp was dangerous, the risk it posed was open and obvious. *See id.* at 12-15. Defendant notes that during Plaintiff's deposition, Plaintiff testified that she could have and should have seen the clamp. *See* ECF No. [75-1] at 25-26. As such, Defendant urges the Court to dismiss counts related to Defendant's alleged failure to warn and failure to maintain.

Plaintiff does not meaningfully address Defendant's argument that Plaintiff failed to present any evidence that the clamp was dangerous. *See generally* ECF No. [90]. Regarding Defendant's open and obvious argument, Plaintiff responds that the material issue is not whether the condition itself was open and obvious but whether the *danger* of the condition was open and obvious. *See id.* at 3 (citing *Petersen v. NCL (Bahamas) Ltd*., 748 F. App'x 246, 250 (11th Cir. 2018) (reversing summary judgment for the cruise line on negligence because "although the wetness of the deck was open and obvious, the unreasonably slippery state of the deck may not have been open and obvious to a reasonable person"); *Frasca v. NCL (Bahamas), Ltd*., 654 F. App'x 949, 952 (11th Cir. 2016) (reversing summary judgment for cruise ship because the deck's visible wetness and weather conditions might not alert a reasonable observer to the deck's slipperiness, thereby leaving the open and obvious issue for a jury); *Knickerbocker v. Bimini SuperFast Operations, LLC*, No. 13-24500, 2014 WL 12536981, at *8 (S.D. Fla. Nov. 21, 2014) (rejecting the defendant's open and obvious argument because "it is the dangerous condition of an object which must be open and obvious, not simply the object itself")). Plaintiff further notes that she testified that she, her husband, and Defendant's employee Mario Gaspic ("Mr. Gaspic") did

not notice the clamp before the incident. *See id.* at 4. Therefore, Plaintiff submits that she did provide sufficient evidence to suggest that the danger was not open and obvious.

The Court agrees with Defendant. As an initial matter, "[a]n operator of a cruise ship has a duty to warn only of known *dangers* that are not open and obvious." *Carroll v. Carnival Corp*., 955 F.3d 1260, 1264 (11th Cir. 2020) (emphasis added). Further, courts have granted summary judgment in favor of defendants when plaintiffs have failed to present any expert testimony that there was a violation of safety standards or a product defect that created a dangerous condition. *See McClanahan v. NCL (Bahamas) Ltd.*, 281 F. Supp. 3d 1350, 1354 (S.D. Fla. 2017) (granting summary judgment in favor of a defendant cruise line after the plaintiff presented no expert testimony that the steps in question violated any safety standards); *Penick v. Harbor Freight Tools, USA, Inc.*, No. 19-CV-23134, 2020 WL 6581606, at *5 (S.D. Fla. Nov. 10, 2020) (granting summary judgment, in part, because the plaintiff did not present any expert testimony of a dangerous condition created by a product defect).

In this case, Plaintiff presented no evidence indicating that the clamp was dangerous. First, Plaintiff's injury in and of itself fails to establish a dangerous condition. The Eleventh Circuit has held, in addressing a motion for summary judgment, that "[t]he mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd*., 785 F. App'x 794, 796 (11th Cir. 2019); *see also Miller v. NCL (Bahamas) Ltd*., No. 15-CV-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016), *aff'd*, 679 F. App'x 981 (11th Cir. 2017) ("The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition."). Second, in Plaintiff's Supplement, Plaintiff concedes that the depositions of Mr. Nautiyal and Ms. Giadans did not yield any evidence of a dangerous condition. *See* ECF No. [113]. Third, the Court does not

consider Mr. Daily's expert opinion for the reasons stated above. There is no other evidence to suggest that the clamp was a dangerous condition, and as a result, summary judgment on Plaintiff's failure to warn and failure to maintain claims is appropriate.[8]

Further, were the Court to assume that the clamp posed a danger and there was a genuine issue of material fact with regard to the dangerous condition, the Court agrees with Defendant that there is no evidence suggesting that the dangerous condition was not open and obvious. Simply put, Plaintiff's deposition testimony makes clear that the purported danger the clamp posed was open and obvious. *See* ECF No. [75-1] at 25-26. Plaintiff testified that she "could have" and "should have" seen the clamp. ECF No. [75-1] at 25-26. Plaintiff also testified that the clamp was "shiny." *Id.* at 16, 21, 25. Plaintiff further testified that her travel companions saw the clamps. *See id.* at 26. As such, Plaintiff's own testimony establishes that the danger that the clamp posed, if any, was open and obvious.

The Court finds *Roberts v. Carnival Corp.*, No. 1:19-CV-25281-KMM, 2021 WL 3887819 (S.D. Fla. May 25, 2021), instructive on this matter. In *Roberts*, the court granted summary judgment in favor of the defendant cruise ship after finding that the defendant did not breach its duty of reasonable care after the plaintiff tripped over a threshold on the defendant's vessel. *See id.* The court noted that the plaintiff testified that she was aware of the threshold and "could have seen the subject threshold." *Id.* at *6. As a result, the court determined that the risks associated with the threshold were "open and obvious to any reasonably prudent person through the exercise of common sense and the ordinary use of their eyesight." *See id.* (quoting *Taiariol v. MSC*

---

[8] Given that Plaintiff fails to present any evidence to establish that a dangerous condition existed, Plaintiff's reliance on *Petersen*, 748 F. App'x at 250, *Frasca*, 654 F. App'x at 952, and *Knickerbocker*, 2014 WL 12536981, at *8, to argue that the dangerous condition was not open and obvious is unavailing. Without providing any evidence to meaningfully dispute the lack of a dangerous condition, any argument that a nonexistent dangerous condition was not open and obvious is inapposite.

*Crociere, S.A.*, No. 0:15-CV-61131-KMM, 2016 WL 1428942, at *4 (S.D. Fla. Apr. 12, 2016), *aff'd*, 677 F. App'x 599 (11th Cir. 2017) (quoting *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345 (S.D. Fla. 2015))). Similarly, in this case, given Plaintiff's testimony that she could have and should have seen the clamp, this Court determines that any reasonably prudent person through the exercise of common sense and the ordinary use of his/her eyesight could have noticed the clamp and any danger it could have posed.

Plaintiff attempts to draw a distinction between *Roberts* and the instant case by arguing that the plaintiff in *Roberts* was aware of the dangerous condition before the incident but Plaintiff in this case was unaware of the dangerous condition before her incident and only testified that she could have and should have seen the clamp. The Court is not persuaded. The Eleventh Circuit has held that, "[i]n evaluating whether a danger is 'open and obvious' we are guided - as in general tort law - by the 'reasonable person' standard." *Carroll*, 955 F.3d at 1264 (citing *Lamb by Shepard v. Sears, Roebuck & Co.*, 1 F.3d 1184, 1189-90 (11th Cir. 1993)). As Defendant correctly notes, "[t]he obviousness of a danger and adequacy of a warning are determined by a 'reasonable person' standard, rather than on a plaintiff's subjective appreciation of the danger. Individual subjective perceptions of the injured party are irrelevant in the determination of whether a duty to warn existed." *John Morrell & Co. v. Royal Caribbean Cruises, Ltd.*, 534 F. Supp. 2d 1345, 1351 (S.D. Fla. 2008); *see also Lugo*, 154 F. Supp. 3d at 1346 ("Whether a danger is open and obvious is determined from an objective, not subjective, point of view."). As such, it is inapposite whether Plaintiff herself saw the clamp before the incident given that a reasonable person would have seen the clamp based on Plaintiff's testimony that she "could have" and "should have" seen the clamp and that the clamp was "shiny." ECF No. [75-1] at 16, 21, 25-26.[9] Plaintiff's testimony indicates

---

[9] Given the objective standard, whether Plaintiff's husband and Mr. Gaspic did not notice the clamp is also immaterial.

that there is no genuine dispute that a reasonable person would have seen the clamp and appreciated the danger, if any, that it posed.

In sum, because Defendant establishes that there is no evidence that the clamp posed a dangerous condition, Plaintiff's failure to warn and failure to maintain claims should be dismissed. Plaintiff's failure to warn claims must be dismissed also because, even if Plaintiff presented evidence that the clamp was dangerous, Plaintiff's own testimony indicates that whatever danger the clamp posed was open and obvious.[10]

### ii.    No Actual or Constructive Notice

Though the Court need not continue, the Court proceeds to address Defendant's argument that it had no actual or constructive notice of the dangerous condition, and that the Court should dismiss Plaintiff's negligent failure to warn and failure to maintain claims. Defendant argues that there is no evidence that Defendant had actual or constructive notice of the supposedly dangerous condition. *See* ECF No. [74] at 15-16. Defendant submits that a search of all incidents and guest complaints yielded no other accident similar to Plaintiff's accident in the three (3) year period preceding Plaintiff's accident. *See id.* at 16.

Plaintiff responds that she is not required to show that Defendant had actual or constructive notice of the dangerous condition for her vicarious liability claims. *See* ECF No. [90] at 5-6 (citing *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164 (11th Cir. 2021)). As for Plaintiff's direct negligence claims, Plaintiff submits that there is a genuine dispute as to Defendant's notice of the dangerous condition because Defendant's corporate representative testified that he was aware of the uneven height of the clamps. *See id.* at 6-7. Plaintiff also avers that photographs of the clamps show "dents

---

[10] The open and obvious nature of a dangerous condition absolves a cruise ship from its failure to warn, but the open and obvious nature of a dangerous condition does not absolve a cruise ship from its failure to maintain. *See Carroll*, 955 F.3d at 1267. Nonetheless, as noted above, Plaintiff's failure to maintain claim fails because there is no evidence that the clamp posed a dangerous condition.

and dings around the edges, which could give rise to a finding that the clamps have been tripped on by other individuals[,]" and Defendant should be deemed to have constructive notice of the dangerous condition. *Id.* at 8. In addition, Plaintiff argues that Defendant's employee, Mr. Gaspic, testified that he did not know about the clamps, and his testimony indicates that Defendant did not properly train its employees. *See id.* at 7-8. Plaintiff lastly argues that she intends to depose additional crewmembers, namely Mr. Nautiyal and Ms. Giadans, to determine whether they know of any passengers tripping over the clamps. *See id.* at 8-9.

Defendant replies that Plaintiff has only asserted direct negligence claims and has not asserted a vicarious liability claim. *See* ECF No. [95] at 4-7. Defendant also argues that the fact that Defendant's corporate representative knew that the clamps were not flush with the floor does not equate to Defendant's notice of the supposedly dangerous condition posed by the clamps. *See id.* at 8. In addition, Mr. Gaspic's testimony that he did not know about the clamps is similarly inapposite to whether Defendant had notice of the dangerous condition. *See id.* Next, Defendant avers that Plaintiff's argument that the "dints and dents" on the clamps indicate the possibility of prior trips and falls is speculative and insufficient to defeat a motion for summary judgment. *See id.* at 8-9.

The Court agrees with Defendant. First, while *Yusko*, 4 F.4th 1164, establishes that a plaintiff alleging vicarious liability is not required to show that the defendant had actual or constructive notice of the dangerous condition, Plaintiff has not alleged vicarious liability. A plain reading of the Amended Complaint establishes that Plaintiff's claims are all direct negligence claims. *See* ECF No. [36] ¶¶ 13-34. Plaintiff does not allege that Defendant's employees were negligent, that Defendant's employees' negligence caused Plaintiff's injuries, or that Defendant is therefore vicariously liable for its employees' negligence. Further, Plaintiff expressly alleges that

19

Defendant, not its employees, was negligent in each Count. *See* ECF No. [36] ¶¶ 13-34. *See Bahr v. NCL (Bahamas) Ltd.*, No. 19-CV-22973, 2021 WL 4034575, at *5 (S.D. Fla. Sept. 3, 2021) ("If Plaintiff intended to plead negligence based upon a theory of vicarious liability, it was incumbent upon Plaintiff to make that clear. As such, the Court will not read such a claim into the Complaint.").[11] Thus, *Yusko* is inapposite, and Plaintiff's failure to warn and failure to maintain claims require a showing of actual or constructive notice. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) ("[T]he benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure.").

The allegation that Defendant's corporate representative knew that the clamps were not flush with the floor does not establish Defendant's notice of the purportedly dangerous condition, because a clamp not being flush with the floor, in and of itself, does not constitute a dangerous condition. Next, the Court is not persuaded that Mr. Gaspic not knowing about the clamps beforehand establishes that Defendant had notice of a dangerous condition. Mr. Gaspic's *lack* of awareness does not advance Plaintiff's argument that Defendant had notice of the dangerous condition. In addition, the "dints and dents" on the clamp do not constitute meaningful evidence that Defendant was on notice of the supposedly dangerous condition because there is no evidence suggesting that trips and falls, as opposed to a myriad of other legitimate uses of the clamps, caused the imperfections. Stated differently, the claim that "dints and dents" were caused by other trips

---

[11] While each Count alleges that Defendant was negligent "through its agents or employees," ECF No. [36] ¶¶ 17, 24, 29, that is true of every direct negligence claim against a corporate defendant, who can only act through the actions of its agents or employees. That phrase alone does not transform Plaintiff's direct negligence claims into vicarious liability claims.

and falls is mere conjecture that does not constitute "evidence on which a jury could reasonably find for [Plaintiff]." *Anderson*, 477 U.S. at 252. Finally, as noted above, Plaintiff's Supplement concedes that the depositions of Mr. Nautiyal and Ms. Giadans did not yield any evidence of actual or constructive notice of an allegedly dangerous condition, *see* ECF No. [113], and the Court does not consider Mr. Daily's expert opinion.

As such, even if Plaintiff presented evidence that the clamp created a dangerous condition, which she did not do, summary judgment is proper on the negligent failure to warn and failure to maintain claims because there is no evidence that Defendant had actual or constructive notice of the supposedly dangerous condition.

### iii.    No Evidence of Negligent Maintenance or Inadequate Crew

Given the Court's ruling, the Court need not address Defendant's separate arguments with respect to negligent maintenance or negligent failure to provide an adequate crew to maintain the flooring in question. The Court reiterates that Defendant has no duty to maintain a non-dangerous condition that it has no notice of. *See Keefe*, 867 F.2d at 1322. Defendant also has no duty to provide a crew to maintain a non-dangerous condition of which it has no notice. *See id.*

### iv.    No Evidence for Emergency Assistance Claim

Lastly, Defendant argues that the "emergency assistance" claim, ECF No. [36] ¶ 15(f), should be dismissed because Plaintiff's own deposition testimony establishes that immediately after her fall, Defendant's crewmembers escorted her by wheelchair to the onboard medical center. *See* ECF No. [75-1] at 29-31. Defendant's medical staff subsequently ran diagnostic testing, including an x-ray. *See id.* After Plaintiff decided to disembark and receive additional medical care beyond what Defendant could offer on the vessel, Defendant arranged for Plaintiff to disembark, and Plaintiff was taken to a local hospital where she received further treatment. *See id.*

Case No. 20-cv-20621-BLOOM/Louis

Accordingly, Defendant avers that given the absence of any evidence to suggest that Defendant failed to provide "emergency assistance," there is no genuine dispute as to any material fact regarding Defendant's alleged failure to provide emergency assistance. Plaintiff fails to respond to Defendant's arguments on this matter. *See generally* ECF No. [90].

The Court agrees with Defendant. Plaintiff's own testimony establishes that there is no genuine issue of material fact with regard to Defendant's alleged failure to provide emergency assistance. *See* ECF No. [75-1] at 29-31. As such, summary judgment on Plaintiff's claim regarding emergency assistance is appropriate.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Renewed Motion to Exclude the Testimony of Plaintiff's Liability Expert, Jay Daily, **ECF No. [128]**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. [74]**, is **GRANTED**.

3. The above-styled case is **DISMISSED WITH PREJUDICE**.

4. To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

5. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 12, 2022.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of Record